Our next case is Generation Capital I, LLC v. John Fliss. 2-2-1-4-2-4. May it please the Court, good morning. My name is Elliot Wickser on behalf of the Appellant Generation Capital I, LLC, and I have previously reserved five minutes for rebuttal. Extensive briefing on this in both the Bankruptcy Court and the District Court, and now before this Court, and I won't bore you with the details. It's all in the brief in terms of the facts. But I will say that a judgment in the State Court was entered in a case where Generation Capital I was a plaintiff in that cause, substituted in, purchased a judgment, and from there, that judgment was contested. In other words, whether or not it was a valid judgment. After that determination was made by the State Court in about 2015, the debtor, John Fliss, the appellee here, filed a Chapter 13 bankruptcy in the Northern District of Illinois, and Judge Cox was assigned to that case. This is a really essentially a question I think, well, although we had a more formal issue raised in the brief, I think the real question is twofold. One is, does res judicata collateral estoppel and the Rooker-Feldman doctrine apply in the bankruptcy case setting? Mr. Wixor, those are very different things. Very different. Issue preclusion and claim preclusion are not the same thing as Rooker-Feldman. And I think you had a very, very, very good argument for issue preclusion or claim preclusion in the Bankruptcy Court and the District Court, but it appears to me that you waived that argument by failing to provide the Bankruptcy Court and the District Court with the final judgment of which there is one. I looked in the State Court record and I have this right here in front of me, this final judgment that was entered in Generation Capital One LLC versus John Fliss and Mark Barr et al. dated July 21, 2015, and nowhere in the District Court or the Bankruptcy Court could I find this document. Judge, I think we do have the citation in the actual brief. I think it's in the record. If you're referring to the... I'm talking about the... I'm referring to the turnover order, which is the final appealable order. Judge, I think that... I mean, all I could say to the court is that it's been referred to throughout. I believe I can find the citation in the record to that memorandum. It's referred to in the briefs. I don't think there's any doubt about the final judgment. It was attached to various briefing. It was part of the stipulation of fact that was entered in the Bankruptcy Court when we tried the case as an evidentiary matter. It was well understood. It was well cited. I don't think that per se... I don't think it has to be per se a piece of evidence in terms of like a document, a certified judgment in order for everyone to acknowledge that it exists. I think even the Bankruptcy Court acknowledged that, yeah, this is what the State Court did in that judgment, and even the District Court acknowledged that... But the way I read it, the way I read the District Court opinion, the Bankruptcy Court opinion at least, was there was this dispute as to whether there was a final judgment under Illinois law. Well, if you're... So there were two orders, essentially. Right. One was a judgment order, and then there was the... Which would, I think, by all stretch... That's a final order, a judgment of order of court that reduced it monetarily. The second order was entered in 2015. That order adjudicated post-judgment claims raised by this debtor in the State Court concerning whether or not that State Court judgment was valid. That determination was not made as a final judgment judge in terms of a... We would say, oh, the case is over. That was under Section 2-1402 of the Illinois State Code of Civil Procedure, which governs post-judgment proceedings. In that case, Judge, the District Court did point out that, wait a second, because that order did not contain 403B language, and those who practice in the... I'm sure your honors are familiar with it, 403B language states language in the order that there's no just cause or reason to delay the enforcement of the judgment. Here, because of the nature of the proceedings, that it was a 2-1402 proceeding, you wouldn't find that type of language in the order. What governs this... What governs, whether it's final or not final, is 403B language which says, under proceedings under Section 2-1402, and it was something we cited in the briefs here, Judge, and also in the District Court, because the District Court raised it in their decision. Because it is a supplementary proceeding, that section of the code applies. And again, just again, standing in the few minutes I have before the bench here, in rebuttal, I will find the citation and the reference to the record where this particular decision, and it's part of the appendix to the brief here, where the judge made this, what we call, a 2-1402 final decision. Mr. Whitcher, I'm afraid we're talking about different things here, and I'm interested... If you can cite us to something, I'm very interested in this, because there's, like I said, this order that was entered in the state court proceedings on July 21, 2015, which I don't think there's any dispute under Illinois law whatsoever that this is absolutely, unequivocally, a final judgment. And it was appealable, and Mr. Fliss never appealed it. And in fact, the time for appealing ran out before he filed his bankruptcy. So, you had a very, very good issue and claim preclusion argument in the District Court and the Bankruptcy Court. And unless they just totally whiffed on this document, I don't think it was ever presented to them. Mr. Whisker, are you saying the determination order followed the turnover order? Correct. One was before the other. The turnover order came first. The determination occurred, and then the... So what happened, Judge, is there was turnover orders, and then the motions for determination occurred. And then the motions for termination, nothing happened after that except that the debtor filed its bankruptcy petition. So, you know, again, I don't know if I'm talking past Your Honor, but there's almost at least in my mind, there's no doubt that 304B4 applies here. And that order is part of the appendix attached to the brief, which was entered in 2015. And I think that in reference, if I can point to Your Honors, in terms of that particular issue, 304B4, as we cited PNC Bank, N.A. v. Hoffman, and they discussed proceedings under 2-1402. And unlike a state court judgment, as I started to talk about before, the state court judgment, it's very clear when that happens, right? We all know that trials happen or summary judgments happen. Time to appeal is no longer told. It starts to run. Here, because of sometimes the difficulty in determining when that appeal will start to toll, 304B4 answers that question. And again, unless I'm missing something, you know, the document we attached was that final judgment, if you will, was that final determination under Section 304B4 of the Supreme Court rules. And more particular, it says judgments and orders appealable without special finding. The following judgments and orders were appealable without special finding, a final judgment or order entered in a proceeding under Section 2-1402. And the FLE, Mr. Fliss, the debtor, says, well, that wasn't really a Section 2-1402 petition, but the state court in its determination, which again is the last order of record in the state court, does indicate, in fact, that the motion for determination was brought under 2-1402. In fact, the motions for determination are captioned as 2-1402 motions. I would like to go back real briefly, though, on the Rooker-Feldman doctrine, if I could, in the few minutes I have, because I don't want to state that I would necessarily agree with the panel that Rooker-Feldman doesn't apply. Now, I understand that is way different. It's not an issue preclusion type of doctrine. It's whether or not the district court or this court has subject matter jurisdiction over a particular set of facts. It's not really judgment-facing. It really is fact-facing. In other words, you don't need a judgment to have Rooker-Feldman necessarily apply, necessarily, but it's what was decided in the state court. We want to give effect to what was in state court. We don't want the federal court to have a retrial on those facts and issues, which is exactly what happened in this district court. I think the district court retried the same facts that were tried in the state court. Those facts, the same facts, were the core operative facts, were, in fact, presented to the bankruptcy court in those particular proceedings. How really so when we ask with Rooker-Feldman whether the federal claim is inextricably intertwined with the state court decision? Here, it seems quite independent because Fisk has gone into bankruptcy court asking for bankruptcy court protection, and his complaint, small c complaint, is not so much about the state court decision or trying to overturn it, but about, and pardon my mispronouncing, the WOJAX conduct and the question of whether they are really GCI 1 and GCI 2, and whether GCI 1 and GCI 2 are the WOJAX, and whether there are these alter ego or merger questions being used to achieve an inequitable recovery. So it's about the WOJAX conduct, not about what was decided in the state court, which was the existence of the debt and how much the debt was. So I don't quite understand your argument that these are the exact same decisions and proceedings and questions. So if I can go, I think that the answer to the question is what I previously said, which is if you look at Rooker-Feldman in the cases that have developed over the years, it really isn't just a judgment sort of, I don't want to use the word preclusion, that would be a wrong description, but that's what the effect is, right? It has the effect of precluding folks coming in to relitigating a judgment that's already been entered in state court. So here, what I would say is that you have two proceedings in the state court. You have the proceeding leading up to the judgment, which I think really clearly Rooker-Feldman would apply to a litigant who would come and file in this district court to try to contest that judgment. Second, though, you have the post-judgment proceedings, which really, I think, are the important proceedings that form the basis of the collateral estoppel and the rest judicata claim, but also form the basis of the Rooker-Feldman subject matter jurisdiction claim, which is, well, hold on a second. All of these facts were disposed of at the state court level. All of these facts were adjudicated, facts that could have been raised. So it is interesting. How do you say they were adjudicated when the state court decision doesn't even hinge on merger, alter ego wasn't even raised? Well, alter ego wasn't raised, but merger was raised. And the state court decision didn't turn on it? The state court decision didn't actually address merger, but the actual pleadings and petitions on file not only addressed merger, but they cited the same case in that document, the determination document filed by this debtor that was filed in the objection in support of what ultimately ended up in the denial. So they raised these issues. The fact that they raised all of them I don't think really matters because they're all the same core operative facts, which is we want this debt extinguished for these following reasons, most of which were raised, but now are being raised in a different type of legal claim. The facts are mostly the same. And when I say that, I mean, not every fact that was raised the same, but if you compare what was raised in the motion determination to the ultimately the stipulation of facts that was entered by agreement of the parties and filed with the bankruptcy court in advance of the evidentiary hearing we had on the objection, those facts are so consistently close to the facts in the state court proceeding that it really is a re-litigation, if you will, setting aside the collateral estoppel of restituta cata claim, a re-litigation of facts, claims, and the judgment that I think Rooker-Feldman says you just can't do. I don't want to get into too much more of your rebuttal time, but Rooker-Feldman has Okay. And I'll reserve the rest for rebuttal. Thank you. You're welcome. Mr. Schechter. Good morning, Your Honor. May it please the court. I'm Joel Schechter. I represent the appellee, John Fliss. I want to address something that Judge Kirsch raised. I don't know the exact date, but I want to make it clear that the motion to determine the amount of the claim was not brought necessarily in a 2-1402 proceeding. Judge White, who was sitting in the state court in the supplementary proceeding court, asked another judge to rule on the amount of the claim that was left when certain parties had disputed what was owed and also to undertake a determination of an adverse claim of John Fliss's wife, Mary Fliss. Once that determination was made, it then was going to go back to Judge White to entertain the motions for turnover and a motion for a charging order. So when counsel refers to Your Honors, he transposed the numbers. He said 403. It's 304A and 304B with respect to appeal of the available orders. He cited to you the 304B-4, I think it was. If you read 304B-4, it says that no language is necessary to say there's no just reason for enforcement or delay for an appeal. 304B-4 talks about a final judgment entered in a 2-1402 proceeding. What we've argued in our brief here is that the motion for determination of the amount of the claim was not a final order that can be addressed with respect to an appeal at that point. The turnover order that I was referring to was signed by Judge McGinn, M-C-G-I-N-G. I apologize. I did not represent Mr. Fliss in the lower court, in the state court I should say. That was never addressed. What the parties addressed in the bankruptcy court and district court was the motion for determination of the amount of the claim. And that, again, in my opinion, and what I've argued, is not a final order that is barred by collateral estoppel or res judicata. With respect to the irreprofilment, I think Your Honor has it correct, we were not contesting the judgment, the confession judgment in the state court. We were presenting an independent claim to the bankruptcy court that the claim that was filed by Generation Capital One should be disallowed because it was extinguished by the payment of a co-obligor. And what Access Realty says is that you can't be a creditor and a debtor at the same time. And what Judge Cox had ruled was, as you referred to it, Judge, the alter ego or surrogate, Generation Capital One being a surrogate for Lawrence Wojak, and the ultimate determination was that the monies that were traced to the payment of the note purchase agreement were traced to funds that were actually owned by Sherry Wojak's trust, which again was another co-obligor. There were four co-obligors on this debt. Mr. Fliss, Mr. Barr, Lawrence Wojak, and the Sherry Wojak trust. And we painstakingly went through all of the statements, the account statements of the Schwab accounts. The monies went from Sherry trust, Sherry Wojak trust, to established accounts of Generation Capital Two. And Generation Capital Two took a note from Generation Capital One for the ultimate transaction. And we found that all of these transactions were really either Lawrence Wojak or Sherry Wojak trust. And that's why she acknowledged that relying on the Access Realty case, that there was an extinguishment of the debt by the payment of a co-obligor. Let me ask you the flip side of what I asked, Mr. Whitzer, or Whitzer, apologies. You did do a lot of discovery in bankruptcy court. That wasn't done in state court. And so I'm trying to understand this because Fiss did raise merger in state court. It was raised in the briefing, so forth, so on. State court just ultimately does not rely on it to make a decision. Are you saying to us, were there systematic barriers in state court that prevented the type of discovery from taking place there that would have uncovered the facts that could have supported not just the merger issue in state court, but also the alter ego issue, which was not raised in state court? And then had these been raised, had the state court relied on them, then it potentially would create some race judicata and collateral estoppel issues. It's going to be pure speculation on my part because I wasn't there. The only thing that was presented, to my recollection, to the state court was the receipt for the purchase, or not for the purchase, for a wire transfer from one of the accounts for the $240,000 that was paid to Barrington Bank, signed by Sherry Wojak on behalf of some account. All I can, again, I'm speculating, but you know that the bankruptcy court record was replete with comments made by Judge Cox throughout the proceeding that Generation Capital One was not complying with court orders. And ultimately, even though Judge Cox didn't have to do it because she had already disallowed the claim, she raised another sanction on Generation Capital One for not complying with court orders throughout in the discovery aspect of the matter, and also for attempting to, quote, sandbag at the evidentiary hearing by trying to produce, or introduce into evidence documents that had not been produced to me and my client. So my speculation is that they were, that Mr. Fliss's counsel in the state court probably was met with the same kind of conduct that I was met in the bankruptcy court, but I was able to overcome it with the assistance of Judge Cox and her orders, and ultimately her decision. I do think that the, as Judge Kirsch had said, the Roker-Feldman doctrine is certainly different than collateral estoppel. We are not contesting the judgment, the confession judgment, that was entered in the circuit court. We are presenting an independent claim that the debt was extinguished, and for the reasons that the motion, the order regarding the motion to determine the amount of the claim was not a final order or final judgment, we do not believe that collateral estoppel or res judicata apply, and certainly the arguments of alter ego were not raised in the state court, so those, all of those issues were not fully litigated in the state court. I think if the panel does not have any further discussion, I'm comfortable with the briefs. Thank you. Thank you, Mr. Schechter. Mr. Whitser. Yes, Judge, thank you. In the 41 seconds I have left. No, we'll give you two minutes. Okay. I was going to say I'll speak fast. I just wanted to clarify, so two things. One, first in the record at 10-2 and then the document itself at 94-97 is the motion for determination, and then the order follows, and that order is dated March 12, 2015, which is the state court order, and in that state court order, that's where the court opined that the judgment is indeed valid in the state court. The state court judge did. Second, just to point out, anything that happened after that, regardless of whether it was found to be valid and the judgment creditor, in this case, GCI, went ahead and tried to collect it, that is what, you know, when you start talking about waiver or, you know, we waived it in the bankruptcy court, 304b-4 addresses, I think, Your Honor's issue, and I think 304b-4 says that a proceeding in the state court is final for purposes of appeal when the petitioner is in a position to collect against the judgment debtor, and that order, the determination order in March of 2015 became final then. The turnover orders, those things were collection issues. The judgment creditor was in a position to collect, and that's what they did. The order was final. Page 23 of appellant's brief citing inland commercial property management versus HOB 1 holding. So, again, if there were further proceedings after that, it didn't change the appealability of that final order as a supplementary proceeding under 304b-4. Judge Durkin vacated the sanctions order. I mean, I don't think that even needs to be addressed here. There was no motion pending for any of that at the time. And just goes to those issues that could have been raised, and it could have easily been raised. So, thank you for your time. Thank you. Thank you, Mr. Shek. Thank you, counsel. The case will be taken under advisement.